UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| JD FACTORS LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 1:09-CV-00095 |
| | ) | |
| FREIGHTCO LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

This case was filed in federal court by Plaintiff JD Factors, LLC, a company with California citizenship, against Defendant Freightco, LLC, a company with Indiana citizenship, under diversity of citizenship pursuant to 28 U.S.C. § 1332(a).[1] (Am. Compl. ¶¶ 1, 2.) JD Factors seeks collection of outstanding payments from Freightco on certain accounts receivable that it purchased from Brankle Brothers Express, Ltd., an Indiana corporation, pursuant to a Factoring and Security Agreement entered into between JD Factors and Brankle. (Am. Compl. ¶¶ 5, 10-12, 19-21.)

Now before the Court is a motion to dismiss filed by Freightco under Federal Rule of Civil Procedure 12(b)(1), asserting that there is no diversity of citizenship between the parties. (Docket # 23.) When boiled down, Freightco challenges the premise that a secured party under a factoring agreement can pursue a claim in federal court under its own citizenship, and asserts that it is the citizenship of the debtor who assigned the account (i.e., Brankle), and not the

---

[1] The parties have consented to the undersigned Magistrate Judge. *See* 28 U.S.C. § 636(c). (Docket # 27.)

secured party, that counts.

After the motion was fully briefed (Docket # 24, 25, 28, 29), the Court heard oral argument on the motion (Docket # 30, 31, 33, 39). For the following reasons, Freightco's motion to dismiss will be DENIED.

## I. FACTUAL AND PROCEDURAL BACKGROUND

JD Factors is in the business of factoring, a type of financing characterized by "the buying of accounts receivable at a discount." (Pl.'s Br. in Opp'n to Def.'s Mot. to Dismiss 5 (quoting BLACK'S LAW DICTIONARY 630 (8th ed. 2004)). On August 17, 2007, JD Factors and Brankle entered into a Factoring and Security Agreement (the "Factoring Agreement"), whereby JD Factors agreed to purchase Brankle's accounts receivable under an agreed-upon discount formula. (Am. Compl. ¶ 5, Ex. A.) In essence, under the Factoring Agreement, JD Factors advances money to Brankle in exchange for its assignment of all rights, payments, and proceeds in its accounts, and then the account debtors pay JD Factors directly. (Pl.'s Br. in Opp'n to Def.'s Mot. to Dismiss 2.) The Factoring Agreement also granted JD Factors a first priority security interest in Brankle's assets, including the accounts receivable.[2] (Am. Compl. ¶ 6, Ex. A ¶¶ 5, 35.) Once the Agreement was entered into, JD Factors promptly provided notice to the account debtors, including Freightco, of the assignment, instructing that payment on the accounts was to be paid to JD Factors. (Am. Compl. ¶ 7, Ex. C; Mem. of Law in Supp. of Def.'s Mot. to Dismiss Ex. C.)

Beginning August 29, 2007, Freightco made payments directly to JD Factors. (Am. Compl. ¶ 10.) However, on July 25, 2008, Freightco ceased making payments on the invoices.

---

[2] Freightco does not dispute for purposes of this motion that the security interest was properly perfected. (Am. Compl. ¶ 6.)

(Am. Compl. ¶ 10.) Despite JD Factors's demands for payment, the invoices remained outstanding, resulting in JD Factors filing this action against Freightco. (Am. Compl. ¶ 11.)

On June 5, 2009, Freightco filed the instant motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), asserting that there is no diversity of citizenship between the parties. (Docket # 23.) While Freightco agrees that diversity jurisdiction would exist if the assignment of its account from Brankle to JD Factors was a "true" sale, it contends that JD Factors merely has a security interest in the accounts. (Def.'s Reply Br. in Supp. of Mot. to Dismiss 12.) As Freightco's argument goes, a secured party under a factoring agreement, such as JD Factors, cannot pursue a claim in federal court under its own citizenship because the "economic realities" of the factoring arrangement make the citizenship of the assignor, Brankle, the critical inquiry. (Reply Br. 12; Docket # 39.)

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) "requires a court to dismiss an action when it lacks subject matter jurisdiction." *Durst v. Ill. Farmers Ins. Co.*, No. 05 C 574, 2005 WL 2007221, at *1 (N.D. Ill. Aug. 16, 2005) (citing *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 945 (7th Cir. 2003)). "Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *United States v. Tittjung*, 235 F.3d 330, 339 (7th Cir. 2000). If there is no statutory basis for its subject matter jurisdiction, "a district court, which is a court of limited jurisdiction, should proceed no further than determining whether to dismiss or transfer the case." *Baker v. Kingsley*, 387 F.3d 649, 656 (7th Cir. 2004).

3

"When reviewing a dismissal for lack of subject matter jurisdiction, . . . a district court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff." *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007). Nevertheless, the Court need not accept as true "conclusory statements of law or unsupported conclusions of fact." *McLeod v. Arrow Marine Transp., Inc.*, 258 F.3d 608, 614 (7th Cir. 2001). In determining whether it has subject matter jurisdiction, a court "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *St. John's United Church of Christ*, 502 F.3d at 625. "The burden of proof on a 12(b)(1) issue is on the party asserting jurisdiction." *United Phosphorus*, 322 F.3d at 946.

### III. DISCUSSION

In briefing the motion, the parties argue at length whether the purported assignment of the Freightco account from Brankle to JD Factors under the Factoring Agreement was a "true" sale or merely the taking of a security interest in the accounts. However, for purposes of determining whether diversity of citizenship exists, this distinction, in the Court's view, simply does not matter.

To explain, the parties agreed at oral argument that the Factoring Agreement, at a minimum, provides JD Factors with a security interest in the disputed account. The parties further agreed that this dispute is governed by Article 9 of Indiana's version of the Uniform Commercial Code ("UCC"). *See* Ind. Code § 26-1-9.1-109(a) (stating that Article 9 applies to a transaction, regardless of its form, intended to create a security interest in accounts and to any sale of accounts).

4

Section 607 of the Indiana UCC provides: "If so agreed, and in any event after default, a secured party . . . may enforce the obligations of an account debtor . . . and exercise the rights of the debtor with respect to the obligation of the account debtor . . . to make payment or otherwise render performance to the debtor . . . ." Ind. Code § 26-1-9.1-607. Therefore, under the plain language of Article 9 of the UCC, JD Factors as a secured party is entitled to enforce collection of Freightco's outstanding debt.

In fact, Freightco does not dispute that JD Factors may seek collection of the account as a secured party. It argues, however, that the "economic realities" of the Factoring Agreement, which provide for some recourse and sharing of profits and losses between Brankle and JD Factors, make the instant secured party relationship more akin to that of principal and agent. And consequently, Freightco urges the Court to look to the citizenship of the principal, not the agent, for purposes of determining diversity jurisdiction. *See, e.g.*, *Associated Ins. Mgmt. Corp. v. Ark. Gen. Agency, Inc.*, 149 F.3d 794, 796 (8th Cir. 1998) (instructing that the citizenship of a mere collection agent who was acting under a power of attorney to collect overdue premiums for various insurance companies, must be ignored for purposes of determining diversity jurisdiction because it was not the real party in interest).

Freightco, however, *has failed to cite to a single case involving a factoring relationship to support its argument.* And, its argument seeks to nullify the fact that the purported "agent" in this instance is a secured party and that the parties agree this dispute is governed by Article 9 of the UCC, the statutory authority that addresses secured transactions, not principal and agent relationships. Furthermore, Freightco's novel argument does not particularly square with the framework of the relevant law.

5

To explain, the Seventh Circuit Court of Appeals has stated that "the citizenship of the real party in interest is determinative when deciding whether the district court has diversity jurisdiction." *CCC Info. Servs., Inc. v. Am. Salvage Pool Ass'n*, 230 F.3d 342, 346 (7th Cir. 2000). "This is because a party who has no real interest in the outcome of the litigation should not be able to use its citizenship to transform a local controversy into a federal case." *Id.* "[T]he real party in interest principle is a means to identify the person who possesses the right to be enforced. Therefore, the term directs attention to whether a plaintiff has a significant interest in the particular action he has instituted . . . ." 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1542.

Here, JD Factors is not acting as a mere collection agent for Brankle; rather, the two entities are parties to a sophisticated lending relationship. Under the terms of the Factoring Agreement, JD Factors has already advanced 95% of the amount due on the Freightco account to Brankle, and the Agreement's terms entitle it to seek payment from Freightco on the account. (*See* Am. Comp. Ex. A ¶¶ 40, 60, 63.) In fact, at oral argument counsel for Freightco referred to the factoring arrangement as a "traditional lending relationship" and conceded that Freightco does not allege that the assignment of the account from Brankle to JD Factors was in any way collusive.

Furthermore, the Factoring Agreement provides that at this point only JD Factors, not Brankle, possesses the authority to seek collection of the amount due from Freightco. (*See* Am. Compl. Ex. A. ¶ 52, 60, 63). "A real party in interest is the person who, under governing substantive law, possesses the rights sought to be enforced." *Garbie v. Chrysler Corp.*, 8 F. Supp. 2d 814, 818 (N.D. Ill. 1998) (citing *Illinois v. Mid-Am. Ins. Co.*, 805 F.2d 763, 764 (7th

6

Cir. 1986)). At a minimum, JD Factors is a secured party possessing a right to be enforced, and Section 607 of the Indiana UCC provides the statutory authority for its enforcement of Freightco's obligations. *See generally Roche v. Country Mut. Ins. Co.*, No. 07-367-GPM, 2007 WL 2003092, at *4 (S.D. Ill. July 6, 2007) "[I]f [a] named party's interest is real, the fact that other interested parties are not joined 'will not affect the jurisdiction of the . . . federal courts." (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S.81, 92 (2005)).

Moreover, several other district courts confronting cases filed by factors against account debtors have not deemed it necessary to delve into the citizenship of the assigning debtor of the account when determining whether diversity of citizenship exists. *See, e.g., Madison Fin., LLC v. Hunts Point Coop. Mkt., Inc.*, No. 01-3830 (WHW), 2008 WL 724362, at *1 (D.N.J. Mar. 17, 2008) (finding diversity jurisdiction existed where factor had New Jersey citizenship and account debtor had New York citizenship, even though debtor who assigned the account also had New York citizenship); *Brookridge Funding Corp. v. Nw. Human Servs.*, 175 F. Supp. 2d 355, 357 (D. Conn. 2001) (offering no information as to the citizenship of the assigning debtor of the account when finding diversity existed between the factor and the account debtor); *First Nat'l Bank of Boston v. Thomson Consumer Elecs., Inc.,* 84 F.3d 397, 398 (11th Cir. 1996) (same). And, as stated *supra*, Freightco's counsel admitted at oral argument that he has not found a single case in which the court found the factor to have the citizenship of the debtor who assigned the accounts receivable.

Moreover, Freightco has produced no case law in which the citizenship of a secured party is ignored in favor of the citizenship of a debtor, when that secured party is seeking to enforce its rights under Article 9 of the UCC. In fact, Freightco's premise seems at odds with the

7

commercial realities recognized within Article 9's enforcement provisions for secured parties. *See, e.g.*, Ind. Code §§ 26-1-9.1-201 (stating that "a security agreement is effective according to its terms between the parties, against purchasers of the collateral, and against creditors"), 202 (explaining that the provisions of Article 9 with respect to rights and obligations "apply whether title to collateral is in the secured party or the debtor"), 607 (stating that a secured party, if so agreed, may enforce the obligations of an account debtor).

In short, Freightco has asked this Court to adopt a position that seemingly conflicts with the express language of Article 9 of the UCC, and it has not produced a single case to support its novel position. The Court is not persuaded; JD Factors as a secured party possesses a right subject to enforcement in this action and thus is a "real party in interest". Consequently, diversity of citizenship exists between Plaintiff JD Factors, a company of California citizenship, and Defendant Freightco, a company of Indiana citizenship, under 28 U.S.C. § 1332(a), and Freightco's motion to dismiss will be DENIED.

## IV. CONCLUSION

For the reasons stated herein, Defendant's motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) (Docket # 23) is DENIED.

SO ORDERED.

Enter for this 13th day of August, 2009.

S/Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge