UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| JD FACTORS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO. 1:09-CV-95 |
| | ) |
| FREIGHTCO, LLC, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

### I. INTRODUCTION

Plaintiff JD Factors, LLC, brings this action against Defendant FreightCo, LLC, to collect $119,226.95, plus interest, in unpaid invoices assigned to JD Factors by non-party Brankle Brothers Express, Ltd. ("BBX").[1] (Docket # 1.) FreightCo contends, however, that as a result of various claims of setoff it has against BBX, it owes nothing to JD Factors.

The parties have now filed cross-motions for summary judgment.[2] (Docket # 58, 66.) For the following reasons, each of the parties' motions will be GRANTED IN PART and DENIED IN PART.

---

[1] Diversity jurisdiction exists under 28 U.S.C. § 1332(a). Jurisdiction of the undersigned Magistrate Judge is based on 28 U.S.C. § 636(c), all parties consenting.

[2] JD Factors filed two motions to strike certain portions of the Affidavit of John Adams, which were ultimately immaterial to the Court's decision. (Docket # 74, 88.) Consequently, these motions will be DENIED AS MOOT. FreightCo also filed two motions to strike (Docket # 70, 94) and a motion in limine (Docket # 67). However, the Court's decision is the same regardless of whether this evidence is considered, and therefore these motions will also be DENIED AS MOOT.
In addition, FreightCo filed two requests for oral argument, one on its summary judgment motion and the other on one of its motions to strike and the motion in limine. (Docket # 63, 77.) These motions will also be DENIED, as the parties adequately briefed the issues and oral argument is unnecessary. *See* N.D. Ind. L.R. 7.5(a) ("The granting of a motion for oral argument shall be wholly discretionary with the court.").

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. *FreightCo and BBX*

FreightCo provides logistics support and brokerage services to shippers and manufacturers, and BBX is a trucking company that provides trucking services for FreightCo. (Adams Aff. ¶¶ 3, 8, 9.) FreightCo and BBX are both owned, in part, by Dennis Brankle, but he takes no part in FreightCo's day-to-day management duties. (Adams Aff. ¶¶ 3, 11, 12.) FreightCo and BBX did business with each other and maintained an ongoing account. (Adams Aff. ¶ 13.) When one company would provide services for the other or make a payment on the other's behalf, it would get a credit on the ledger. (Adams Aff. ¶ 13, Ex. 2.) FreightCo took a security interest in nearly all of BBX's assets to secure the debts BBX owed to FreightCo. (Adams Aff. ¶ 35, Ex. 6.)

John Adams, Senior Vice President of BBX and Chief Executive Officer and part owner of FreightCo, performed the accounting services for both BBX and FreightCo and oversaw the ledgers kept between the two companies. (Adams Aff. ¶¶ 5, 12, 13.) Tracy Niverson, who also performed services for both BBX and FreightCo, managed the billing, accounts receivable, and accounts payable for both companies. (Niverson Aff. ¶¶ 2, 11, 12; McDonald Aff. ¶ 15.)

### B. *BBX's Banking Relationship with Chase Bank*

In February 2006, BBX obtained certain financing from J.P. Morgan Chase Bank, N.A. ("Chase Bank"), which was memorialized by a Promissory Note in the amount of $250,000 (the "Note") and a Lease Agreement (the "Lease"). (Adams Aff. ¶ 20, Exs. D and G of Ex. 2.) As part of the transaction, FreightCo and Brankle Brokerage and Leasing, Inc. ("BB Leasing"), another company owned by Dennis Brankle and his wife, each guarantied BBX's obligations to

Chase. (Adams Aff. ¶¶ 5, 21; Exs. E and G of Ex. 2; Exs. I , L, N, O, and V of Ex. 3.)

Approximately one year later, on March 2, 2007, BB Leasing filed bankruptcy. (Adams Aff. ¶ 23, Ex 1.) The filing of bankruptcy by a guarantor constitutes an event of default under the terms of the Note and Lease. (Adams Aff. ¶ 22, Exs. D and G of Ex. 2.)

### C. BBX and JD Factors Enter Into the Factoring Agreement

In March or April 2007, believing BBX's financing with Chase Bank to be at risk, Adams contacted JD Factors about entering into a factoring relationship with BBX. (Wiley Aff. ¶¶ 9, 13; Adams Aff. ¶ 29.) Factoring involves the purchasing of accounts receivable from a supplier of goods or services by advancing funds to the supplier and then collecting payment from the supplier's customer, charging a percentage of the payment as a fee for services. (Wiley Aff. ¶ 5.)

Adams negotiated the terms of the factoring relationship on BBX's behalf with Chip Wiley, Senior Vice President of JD Factors, and provided JD Factors with the information and documents it requested from BBX. (Wiley Aff. ¶¶ 2, 11-18, 20-21; Adams Aff. ¶¶ 31, 33.) In fact, Adams and Wiley specifically discussed that part of the invoices to be sold to JD Factors were BBX's accounts with FreightCo. (Wiley Aff. ¶ 15.) Adams, however, left BBX in July 2007 to work full-time at FreightCo before the terms of the factoring relationship were finalized, and thus he never reviewed the final agreement.[3] (Wiley Aff. ¶¶ 11-18, 20-21; Adams Aff. ¶¶ 32, 33, 41.)

On August 17, 2007, JD Factors and BBX signed a Factoring and Security Agreement.

---

[3] Though Adams resigned his position as Senior Vice President of BBX in July 2007 and went to work for FreightCo full-time, he continued to provide some bookkeeping services for BBX from time to time upon Dennis Brankle's request. (Adams Aff. ¶ 33.)

(Wiley Aff. ¶ 27, Ex. 19.) Dennis Brankle and his wife Carol signed the Agreement on BBX's behalf. (Wiley Aff. ¶ 28, Ex. 19.) Under this Agreement, BBX assigned many of the invoices from FreightCo to JD Factors. (Wiley Aff. ¶¶ 11-21.) As a condition of the Agreement, FreightCo signed a Subordination Agreement in which it agreed that its lien on BBX's accounts receivable would be subordinated to the lien held by JD Factors. (Adams Aff. ¶ 36, Ex. 7.)

JD Factors contends that it sent FreightCo an authenticated Notice of Assignment through the U.S. Mail on August 20, 2007, informing FreightCo that BBX had assigned its account to JD Factors. (Adams Aff. ¶ 43; Niverson Aff. ¶ 8, Ex. 1; Pl.'s Resp. to First Set of Interrogs. No. 3.) Niverson checks for and opens most of FreightCo's mail; more particularly, she reviews the mail and directs it to the proper recipient or "take[s] care of the matter if the mail concerns billing or payables." (Niverson Aff. ¶¶ 3, 4.) Niverson states that FreightCo never received the Notice of Assignment purportedly sent by JD factors. (Niverson Aff. ¶¶ 8, 9; McDonald Aff. ¶ 16; Adams Aff. ¶ 42.)

### D. Administration of the Factoring Agreement

Under the Factoring Agreement, Niverson provided information about BBX's accounts to JD Factors. (Niverson Aff. ¶ 11, Ex. 2; Gutierrez Aff. ¶ 5.) In doing so, she signed on BBX's behalf certain documents entitled "Schedule of Accounts (Sale of Accounts Receivable)" that were addressed to JD Factors. (Niverson Aff. Ex. 2; Wiley Aff. ¶ 35, Ex. 25; Gutierrez Aff. ¶ 5.) Attached to each Schedule of Accounts was an itemized list of invoices from BBX's customers, including FreightCo, reflecting the date and amount of each invoice assigned to JD Factors. (Niverson Aff. Ex. 2; Wiley Aff. ¶ 35.)

During this same time period, Niverson also assisted Adams in making payments from

4

FreightCo to JD Factors for amounts owed on invoices from BBX. (Niverson Aff. ¶ 12.) In fact, Niverson was one of the primary persons at FreightCo who JD Factors communicated with regarding payments from FreightCo. (Wiley Aff. ¶ 36.)

In making payments, FreightCo issued checks made payable to "Brankle Brothers" with the memo notation "c/o JD Factors" and sent those payments to JD Factors. (Adams Aff. ¶ 38.) Occasionally, FreightCo would make payments for the same purpose through electronic bank wire transfer. (Adams Aff. ¶ 39, Ex. 8.) These payments by FreightCo to JD Factors commenced on August 23, 2007, just days after the signing of the Factoring Agreement, and continued until mid-2008. (Adams. Aff. ¶ 40; Wiley Aff. ¶¶ 33, 34, 48.) During the period of February to May 2008, FreightCo had difficulty making payments on the outstanding invoices, and therefore FreightCo and JD Factors agreed on a payment plan whereby FreightCo paid reduced amounts. (Wiley Aff. ¶¶ 44-46.)

### E. Chase Bank Demands Payment from FreightCo, and FreightCo Obtains Default Judgment Against BBX

On May 25, 2008, Chase Bank notified FreightCo that it was in default under the terms of the Note and Lease. (Adams Aff. Exs. F and I of Ex. 2.) It demanded immediate payment of the outstanding principal, plus interest and late fees, from FreightCo as guarantor of the loan. (Adams Aff. Exs. F and I of Ex. 2.) FreightCo then paid the outstanding amount, $116,735.96, to Chase Bank. (Adams Aff. Ex. 4.)

Shortly thereafter, FreightCo filed suit against BBX to collect $142,919.83, which included, among other things, $23,369.81 owed by BBX on the ongoing account ledger and the $116,735.96 it had paid to Chase Bank. (Adams Aff. ¶ 26, Exs. 2, 4.) On July 9, 2008, FreightCo obtained a default judgment against BBX in the amount of $142,919.83, plus costs.

(Adams Aff. ¶ 27, Ex 5.)

### F. FreightCo Ceases Payments to JD Factors

On July 31, 2008, Adams sent JD Factors an e-mail stating that FreightCo would no longer be sending any payments on invoices because it had obtained the judgment against BBX. (Adams Aff. ¶ 40, Ex. 9; Wiley Aff. ¶ 48, Ex. 28.) Adams explained that FreightCo was setting off the $142,919.83 judgment against the outstanding invoices it owed to BBX, which at the time amounted to $119,226.98. (Adams Aff. ¶ 40, Ex. 9; Wiley Aff. ¶ 48, Ex. 28.) This e-mail was the first time that FreightCo asserted that it was claiming any setoff based upon separate BBX obligations. (Wiley Aff. ¶ 49.)

As a result of FreightCo's ceasing payments, JD Factors filed the instant suit on April 14, 2009, seeking the collection of $119,226.95 in unpaid invoices, plus interest and attorney's fees and costs. (Docket # 1, 11.) FreightCo then filed a counterclaim in the suit, asserting that it owes nothing to JD Factors after setting off various liabilities owed to it by BBX. (Docket # 44.)

## III. STANDARD OF REVIEW

Summary judgment may be granted only if there are no disputed genuine issues of material fact. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). When ruling on a motion for summary judgment, a court "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Id.* The only task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 688 (7th Cir. 2008) (quoting *Payne*, 337 F.3d at 770). If the evidence is such that a reasonable factfinder could return a verdict in favor of the nonmoving party, summary judgment

may not be granted. *Payne*, 337 F.3d at 770.

A court must construe the record in the light most favorable to the nonmoving party and avoid "the temptation to decide which party's version of the facts is more likely true," as "summary judgment cannot be used to resolve swearing contests between litigants." *Id.* However, "a party opposing summary judgment may not rest on the pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact for trial." *Id.* at 771.

"When cross-motions for summary judgment are filed, courts "look to the burden of proof that each party would bear on an issue of trial; [courts] then require that party to go beyond the pleadings and affirmatively to establish a genuine issue of material fact." *M.O. v. Ind. Dept. of Educ.*, No. 2:07-CV-175-TS, 2009 WL 857548, at *3 (N.D. Ind. Mar. 31, 2009) (alteration in original) (citing *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997)). "The contention of one party that there are no issues of material fact sufficient to prevent the entry of judgment in its favor does not bar that party from asserting that there are issues of material fact sufficient to prevent the entry of judgment as a matter of law against it." *Id.* (citation omitted); *see Zook v. Brown*, 748 F.2d 1161, 1166 (7th Cir. 1984). "It is true that cross-motions for summary judgment do not waive the right to a trial, but this rule does not alter the respective burdens on cross-motions for summary judgment—more particularly here, the responsive burden of a plaintiff who moves for summary judgment and is confronted with a cross-motion for summary judgment. The motions are treated separately." *McKinney v. Cadleway Props., Inc.*, 548 F.3d 496, 504 (7th Cir. 2008) (citations omitted); *M.O.*, 2009 WL 857548, at *3.

## IV. DISCUSSION[4]

FreightCo contends in its summary judgment motion that it has a complete defense to JD Factors's claim under § 404 of Indiana's version of the Uniform Commercial Code. Specifically, FreightCo asserts that it is entitled to judgment as a matter of law because: (1) it did not receive an authenticated notification of the assignment of its account and therefore it is entitled to assert against JD Factors, as BBX's assignee, the right to set off its $142,919.83 judgment against BBX; and (2) FreightCo's right to set off the amount owed to it by BBX under the account ledger and its liability under the guaranty to Chase Bank both accrued prior to BBX entering into the Factoring Agreement and thus before any notice could possibly have been issued. JD Factors, on the other hand, asserts that it, not FreightCo, is entitled to summary judgment in its favor because: (1) an account was stated between it and FreightCo when they agreed to a payment plan in 2008, thereby extinguishing FreightCo's claims of setoff; (2) FreightCo's claims of setoff are barred by laches and estoppel; and (3) FreightCo's claims of setoff arose after it received notice of assignment and are therefore barred under Indiana Code § 26-1-9.1-404.

Each of the parties' arguments will be discussed in turn, beginning with those advanced by JD Factors. In the end, just one of JD Factors's arguments and one of FreightCo's arguments have merit and serve to resolve this case on summary judgment.

*A. No "Account Stated" Was Created That Would Extinguish FreightCo's Claims of Setoff*

JD Factors first contends that it is entitled to summary judgment in its favor because an account was stated in the amount of $119,226.95, plus interest, between it and FreightCo when

---

[4] The parties do not dispute that Indiana law governs this matter, in particular, Indiana's version of the Uniform Commercial Code. (Def.'s Br. in Supp. 10 n.3; Pl.'s Br. in Supp. 5); *see* Ind. Code § 26-1-9.1-109(a)(3) (providing that Article 9 applies to a sale of accounts).

they agreed to a payment plan in 2008, extinguishing FreightCo's claims of setoff. JD Factors's first argument is unconvincing.

Under Indiana law, "[a]n account stated is established by an agreement between the parties that all items of the account and the balance of those items are correct, together with a promise, express or implied to pay the balance." *Auffenberg v. Bd. of Trs. of Columbus Reg'l Hosp.*, 646 N.E.2d 328, 331 (Ind. Ct. App. 1995). "An agreement that the balance is correct may be inferred from delivery of the statement and the account debtor's failure to object to the amount of the statement within a reasonable amount of time." *Id.*; *see also B.E.I., Inc. v. Newcomer Lumber & Supply Co.*, 745 N.E.2d 233, 236 (Ind. Ct. App. 2001). An account stated "operates as a new contract without the need for renewed consideration, and the plaintiff does not need to plead and prove the creation and performance of each contract underlying the account." *B.E.I., Inc.*, 745 N.E.2d at 236 (citation omitted).

As JD Factors sees it, an account was stated between it and FreightCo when FreightCo paid the invoices without objection from August 2007 to May 2008. JD Factors's perspective, however, is a bit circumscribed. In order to establish an account stated, the parties must "view the account as a final adjustment of the respective demands between them." *Id.* (quoting *MHC Surgical Ctr. Assocs., Inc. v. State Office of Medicaid Policy & Planning*, 699 N.E.2d 306, 309 (Ind. Ct. App. 1998)). Here, while FreightCo did indeed pay the invoices for nine months, JD Factors has not produced any evidence that suggests FreightCo agreed to a total outstanding balance against it, much less that FreightCo viewed their payment plan as a "final adjustment" of the respective demands between the parties. *See generally Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008) ("Summary judgment is the 'put up or shut up'

9

moment in a lawsuit." (citation omitted)).

In fact, FreightCo clearly objected to the total amount due between the parties when it stopped making payments and asserted a right of setoff in its July 31, 2008, e-mail to JD Factors. *See, e.g.*, *MHC Surgical Ctr.*, 699 N.E.2d at 310 (finding no account stated was created where individual claims were submitted for reimbursement but not with the understanding that they would be considered as a "final adjustment" of the demands between the parties).

Consequently, JD Factors's first argument falls short of meriting summary judgment in its favor.

*B. The Doctrines of Laches and Estoppel Also Do Not Bar FreightCo's Claims of Setoff*

Next, JD Factors contends that regardless of whether FreightCo can properly assert claims of setoff, such claims are barred by the doctrines of laches or estoppel as a result of FreightCo's failure to raise this defense prior to or during the time it made payments to JD Factors. Again, JD Factors's argument is insufficient to secure judgment as a matter of law in its favor.

For a defense of laches to apply, a claimant must establish three elements: "inexcusable delay in asserting a right, implied waiver from knowing acquiescence in existing conditions, and circumstances resulting in prejudice to the adverse party." *Huber v. Sering*, 867 N.E.2d 698, 710 (Ind. Ct. App. 2007). Similarly, the doctrine of estoppel requires the following elements: "(1) a promise by the promisor; (2) made with the expectation that the promisee will rely thereupon; (3) which induces reasonable reliance by the promisee; (4) of a definite and substantial nature; and (5) injustice can be avoided only by enforcement of the promise." *Kacak v. Bank of Calumet, N.A.*, 869 N.E.2d 1239, 1242 (Ind. Ct. App. 2007); *see also Meisenhelder v. Zipp Express, Inc.*,

788 N.E.2d 924, 932 (Ind. Ct. App. 2003) (explaining that the doctrine of estoppel can be used to bar a claim when "[a] promisor who induces a substantial change of position by the promisee in reliance upon the promise is estopped from denying the enforceability of the promise").

Here, JD Factors's assertion of laches and estoppel fails because there is no evidence that it was prejudiced by FreightCo's delayed assertion of setoff or that it substantially changed its position in reliance on a purported promise to pay made by FreightCo. While JD Factors suggests that it substantially changed its position when it agreed to a payment plan that allowed FreightCo to pay reduced payments for a period of a few months, and that therefore it was injured by FreightCo's delay in claiming a setoff, this assertion is without merit. It is simply illogical to infer that JD Factors would have demanded *greater* payments from FreightCo under the payment plan or that FreightCo would have agreed to pay them, if in fact FreightCo actually owed it *less* money by way of setoff. *See Gleeson v. Preferred Sourcing, LLC*, 883 N.E.2d 164, 180 (Ind. Ct. App. 2008) ("Laches does not turn on time alone. Unreasonable delay causing prejudice or injury is necessary."). Rather, it would be more reasonable to infer that, if anything, JD Factors *benefitted* under the payment plan from FreightCo's delay in disclosing the setoffs because it continued to receive, at least for some time, an uninterrupted (and unchallenged) stream of payments.

Furthermore, while JD Factors attacks Adams at length for his failure to disclose the claims of setoff when negotiating the terms of the Factoring Agreement, it is undisputed that Adams was representing BBX at the time, *not* FreightCo. Therefore, JD Factors's assertion that Adams's behavior was "egregious" during the negotiations has no real bite in this suit against FreightCo. Consequently, as a matter of law, JD Factors's contention that FreightCo's claims of

11

setoff are barred by the doctrines of laches or estoppel is without merit.[5]

## C. FreightCo Had Notice of the Assignment Soon After the Factoring Agreement Was Signed in August 2007 and Thus Any Claims of Setoff Accruing After Such Time Are Barred

The final argument advanced by JD Factors pertains to the notice of assignment requirement under Indiana Code § 26-1-9.1-404, which also serves as the basis for FreightCo's first argument in support of its motion for summary judgment. Ultimately, FreightCo's argument pertaining to § 404 is non-meritorious, while JD Factors's argument entitles it to summary judgment in its favor, at least in part.

Indiana Code § 26-1-9.1-404(a) provides that "the rights of an assignee are subject to . . . any other defense or claim of the account debtor against the assignor which accrues before the account debtor receives a notification of the assignment authenticated by the assignor or the assignee." Here, BBX is the assignor, JD Factors is the assignee, and FreightCo is the account debtor. The crux of the arguments advanced by the parties under this statute is the date upon which FreightCo received notification of BBX's assignment of its account, which determines whether FreightCo is entitled to assert its various claims of setoff.

As to FreightCo's position, it contends that it never received an "authenticated

---

[5] JD Factors also argues that it is entitled to summary judgment in its favor under a "common count" theory. Under Indiana law, "where the parties have agreed upon the compensation for labor, and it has been performed, the agreed price may be recovered under a common count for work and labor done." *Ryan v. Parker*, 95 N.E. 344, 345 (Ind. Ct. App. 1911) (citing *Scott v. Congdon*, 6 N.E.625, 626 (1886)). As JD Factors sees it, its common count claim against FreightCo should be granted as a matter of law because BBX provided services to FreightCo, BBX fully performed, and FreightCo is obligated to pay JD Factors for such services.
   JD Factors's claim is a non-starter. JD Factors is not one of the two parties who "agreed upon the compensation for labor". *Id*. That is, JD Factors has not provided any services to FreightCo. Nor has JD Factors pointed to any law that would allow it to recover under a common count theory as an assignee of accounts receivable. Apparently, JD Factors recognized these points because it has not pursued this argument in its reply brief. *See generally Fitzpatrick v. City of Fort Wayne*, No. 1:07-CV-259-RBC, 2009 WL 735025, at *9 n.6 (N.D. Ind. Mar. 19, 2009) (recognizing that defendants apparently abandoned one of their arguments for summary judgment by failing to address or defend it in their reply brief). Consequently, JD Factors's "common count" claim against FreightCo fails as a matter of law.

12

notification" from JD Factors or BBX as required by § 404 (that is, at least until it was produced by JD Factors during discovery in this lawsuit). Therefore, according to FreightCo, § 404 entitles it to set off its July 2008 judgment of $142,919.83 against JD Factors's claim of $119,226.95, because the judgment accrued before FreightCo received authenticated notification of the assignment. Thus, FreightCo contends § 404 provides it with a complete defense to JD Factors's claim.[6]

JD Factors, of course, sees things differently. Although it acknowledges that FreightCo denies ever receiving the written Notice of Assignment, JD Factors asserts that this is ultimately immaterial because FreightCo clearly had *actual* notice of the assignment as soon as August 2007 when the Factoring Agreement commenced. This actual notice, JD Factors asserts, was obtained through the knowledge of Dennis Brankle, Adams, and Niverson, and was evidenced through FreightCo's nine months of payments to JD Factors commencing on August 23, 2007, just five days after the Factoring Agreement was signed. Furthermore, JD Factors emphasizes, an authenticated notification did indeed rest in FreightCo's hands through Niverson.

Ultimately, JD Factors's position, in contrast to FreightCo's, is persuasive. While FreightCo advocates at length with respect to § 404 concerning the distinction between receipt of an "authenticated notification", a signed writing according to FreightCo, *see* Ind. Code § 26-1-9.1-102(7), and actual notice, this point is ultimately not pivotal to resolution of the case. This is because, as JD Factors points out, Niverson, who simultaneously serviced BBX's accounts receivable and FreightCo's accounts payable, did indeed execute and possess an authenticated notification of assignment.

---

[6] FreightCo advances this argument both as a defense and a counterclaim.

To explain, the parties do not dispute that Niverson executed various "Schedule of Accounts (Sale of Accounts Receivable)" on BBX's behalf when she was employed by both BBX and FreightCo, which she then sent to JD Factors. Attached to each Schedule of Accounts was an itemized list of invoices from BBX's customers, including FreightCo, reflecting the date and amount of each invoice assigned to JD Factors. (Niverson Aff. Ex. A.) The following language appeared at the top of each Schedule of Accounts:

> For valuable consideration, the receipt and sufficiency of which are hereby acknowledged by undersigned, the undersigned hereby sells, assigns and transfers to J.D. Factors, LLC, its successor and assigns, all the un[d]ersigned's rights, titles and interests in and to the following accounts, including all monies due or to become due thereon. The undersigned hereby agrees that:
>
> 1. This sale, assignment and transfer is an absolute sale and is not intended as security[;]
>
> 2. The account debtors named below are indebted to the undersigned in the sums and opposite their respective names for merchandise sold and delivered or for services completed and accepted; and
>
> 3. All representations and warranties made by the undersigned in the existing agreement between the undersigned and J.D. Factors, LLC are true and complete as of the date of this sale.

(Niverson Aff. Ex. 2 (font in original).)

Here, it is undisputed that Niverson was the person responsible for simultaneously servicing BBX's accounts payable and FreightCo's accounts receivable. Consequently, through her execution of the Schedule of Accounts for BBX, she prepared, in effect, an "authenticated notification" of assignment and thus FreightCo, through Niverson, had notice in 2007 which of its invoices were assigned to JD Factors. *See Hall Bros. Constr. Co. v. Mercantile Nat'l Bank of Ind.*, 642 N.E.2d 285, 288-89 (Ind. Ct. App. 1994) (concluding that debtor received notice that its account had been assigned where "the debtor's employee who received the [notice] letter is also the person in the corporation assigned who is responsible to act on the notice"); *see also In re Bancroft Dairy, Inc.*, 10 B.R. 920, 926 (Bankr. W.D. Mich. 1981) (finding that debtor had notice of assignment where an "insider" of the account debtor was present at and participated in

14

the assignment of the account).

Furthermore, the Notice of Assignment purportedly mailed by JD Factors was directed to FreightCo's "Accounts Payable Manager". And, it is undisputed that Niverson screens FreightCo's mail and manages its matters relating to accounts receivable and accounts payable. (Niverson Aff. ¶¶ 2-4 ("At both companies, my job duties include managing the billing, the accounts receivable and accounts payable.").) Therefore, the same person, Niverson, who prepared the Schedule of Accounts detailing the accounts BBX was assigning, is the same person who would have received the Notice of Assignment from JD Factors, and there is no reason to believe that such receipt would have provided FreightCo with some greater notice than it already had. *See generally Southport Little League v. Vaughan*, 734 N.E.2d 261, 275 (Ind. Ct. App. 2000) ("[K]nowledge of material facts acquired by an agent in the course of [her] employment, and within the scope of [her] authority, is the knowledge of the principal . . . ."); *see also Fehribach v. Ernst & Young, LLP*, No. 1:03-cv-1551-JDT-WTL, 2006 WL 1994846, at *5 (S.D. Ind. July 14, 2006) (same).

In sum, FreightCo's position that it never received an "authenticated notification" of assignment and therefore can set off its July 2008 judgment against JD Factors's claim does not give rise to a material issue of fact and ultimately is without merit. Rather, this record bears just one conclusion—that FreightCo had notice of the assignment in 2007 soon after execution of the Factoring Agreement. Therefore, FreightCo's motion for summary judgment on this basis will be DENIED, while JD Factors's motion for summary judgment will be GRANTED, subject, however, to the Court's conclusion *infra* concerning FreightCo's claim of setoff arising from the outstanding account ledger balance.

*D. FreightCo Is Entitled to Set Off Its Claim Arising
From the Account Ledger But Not the Guaranty*

Finally, FreightCo argues that regardless of when or if it received notice of the assignment, it still has a complete defense to JD Factors's claim because two claims of setoff—one arising from the account ledger and one from the guaranty—accrued before the Factoring Agreement was ever signed in August 2007 and thus before notice could have possibly been given.[7] While FreightCo's claim of setoff from the account ledger has merit, its claim of setoff arising from the guaranty does not.

1. <u>FreightCo's Claim Arising From the Account Ledger Accrued Prior to the Factoring Agreement and Thus May Be Set Off Against JD Factors's Claim</u>

"[A] set-off exists between two persons, each of whom under an independent contract, express or implied, owes an ascertained amount to the other . . . ." *Am. Mgmt., Inc. v. MIF Realty, L.P.*, 666 N.E.2d 424, 432 (Ind. Ct. App. 1996) (internal quotation marks and citation omitted). "Indiana courts clearly declare that set-off can occur when the debt is due." *First Bank of Whiting v. Samocki Bros. Trucking Co.*, 509 N.E.2d 187, 198 n.7 (Ind. Ct. App. 1987); *see generally In re Timothy Dean Rest. & Bar*, 342 B.R. 1, 22 (Bankr. D.C. 2006) (stating that where an account is assigned, "[t]he account debtor would still be able to set off her transferred debt against any amounts owed to her prior to the notice and demand").

Here, the parties do not dispute that before BBX entered into the Factoring Agreement in August 2007, FreightCo regularly advanced or spent money for BBX's benefit and maintained an ongoing account ledger to record these transactions. (*See* Adams Aff. ¶ 44, Exs. 13, 14.) There also is no dispute in the record that these amounts were immediately due and payable from

---

[7] FreightCo again advances this argument both as a defense and a counterclaim.

BBX to FreightCo. (Adams Supplemental Aff. ¶ 3.) As a result, FreightCo is correct that pursuant to Indiana Code § 26-1-9.1-404, any amount owed by BBX on the account ledger prior to August 21, 2007, the earliest date FreightCo could have received notice of assignment under the Factoring Agreement, can be set off against JD Factors's claim. This claim of setoff clearly accrued prior to the commencement of the Factoring Agreement, and thus prior to FreightCo's receipt of notice of assignment.

In that regard, while FreightCo asserts that BBX owed it $119,792.48 as of August 21, 2007, the record indicates that FreightCo has since collected all but $23,369.81 of that amount. (*See* Def.'s Reply Br. 9 ("[T]he amount owed by [BBX] to FreightCo as of August 21, 2007[,] was greater than the amount owed almost a year later when it was given a default judgment. . . . [BBX] was an active business, and FreightCo was able to substantially reduce its account exposure (but not eliminate it) over the following eleven months."); Adams Aff. ¶ 26, Ex. 4.) Of course, to avoid double recovery, FreightCo is entitled to set off the remaining uncollected portion of that debt. Therefore, FreightCo's motion for summary judgment will be granted with respect to its claim of setoff arising from the account ledger, but the claimed setoff of $119,792.48, plus interest, must be reduced to only $23,369.81, plus interest—the portion of the debt that still remains outstanding.

    2.  <u>FreightCo's Claim Arising From the Guaranty Accrued After the Commencement of the Factoring Agreement and Thus May Not Be Set Off Against JD Factors's Claim</u>

FreightCo also contends that as a guarantor of BBX's Note and Lease with Chase Bank, a cause of action for exoneration accrued on March 2, 2007, the date its co-guarantor BB Leasing filed for bankruptcy. FreightCo asserts, unpersuasively so, that it is entitled to set off $116,735.96, the amount of its liability to Chase Bank under the guaranty, against JD Factors's

17

claim.

With respect to a guaranty, "if the principal obligor has no defense to its duty of performance, the secondary obligor is entitled to appropriate relief protecting its interests. The right of such relief is sometimes called the right of exoneration." *Irish v. Woods*, 864 N.E.2d 1117, 1124 (Ind. Ct. App. 2007). Thus, exoneration is essentially a suit in equity seeking to compel the principal obligor on the loan to pay in order to relieve the guarantor from the burden of payment and potential financial disaster.

In support of its argument concerning exoneration, FreightCo asserts that the "liabilities under its continuing guaranty of the Chase Bank obligations had matured *and become immediately due and payable* upon the default of the obligations when [BB Leasing] filed bankruptcy in March 2007." (Def.'s Br. in Supp. 23 (emphasis added).) FreightCo's assertion, however, is defied by the record. While the filing of bankruptcy by a guarantor is indeed an "event of default" under the terms of the Note and Lease, it does not automatically render their outstanding balances immediately due and payable.[8] (*See* Adams Aff. ¶ 22, Exs. J and S of Ex. 3.)

Rather, the terms of the Note and Lease provide that upon the occurrence of an event of default, Chase Bank *may* declare the loan immediately due and *may* pursue its available remedies under the Lease. (*See* Adams Aff. Exs. J and S of Ex. 3.) Chase Bank did not call the Note and Lease until March 25, 2008, and consequently FreightCo's cause of action under the guaranty

---

[8] The only event under the Note that automatically renders the outstanding balance due and payable is the insolvency of the principal obligor. (*See* Adams Aff. Exs. J and S of Ex. 3.) Therefore, if BBX had filed for bankruptcy, rather that BB Leasing, the balance of the Note would have automatically accelerated and been immediately due and payable. (*See* Adams Aff. Exs. J and S of Ex. 3.)

18

accrued *after* the commencement of the Factoring Agreement in August 2007.[9] *See, e.g., United States of America v. Vanornum*, 912 F.2d 1023, 1027 (8th Cir. 1990) ("Because [the guarantor] had no obligation to pay under the guarantees until [the debtor] defaulted *and* a written demand for payment was made, . . . the statute of limitations on [the creditor's] action to collect under the guarantees began to run only after [the debtor] had received [the creditor's] demand." (emphasis in original)); *see generally Nissenberg v. Felleman*, 162 N.E.2d 304, 307 (Mass. 1959) ("[W]here sureties are under *a duty of immediate performance* to a creditor, a surety has a right of exoneration against the cosureties who have [consented] to his becoming a surety, to the same extent that upon performance he would be entitled to contribution." (emphasis added).)

In short, because FreightCo's claim for exoneration (arising from its liability as a guarantor) arose after it had notice of the assignment, FreightCo may not set off this liability under Indiana Code § 26-1-9.1-404 against JD Factors's claim. Therefore, FreightCo's motion for summary judgment on this basis will be denied.

## V. CONCLUSION

For the foregoing reasons, Plaintiff's and Defendant's motions for summary judgment (Docket # 58, 66) are each GRANTED IN PART and DENIED IN PART in that, as a matter of law, Defendant owes Plaintiff $119,226.95, less Defendant's setoff of $23,369.81 (the remaining uncollected ledger balance of the amount owed to FreightCo by BBX). Plaintiff's motions to strike (Docket # 74, 88), Defendant's motions to strike (Docket # 70, 94), and Defendant's motion in limine (Docket # 67) are all DENIED AS MOOT. Defendant's requests for oral

---

[9] Apparently, there is some discrepancy in the record whether the March 2008 demand that FreightCo received was Chase Bank's first demand or whether Chase initially called the Note and Lease on December 22, 2007, and FreightCo failed to receive the notice. (*See* Pl.'s Br. in Supp. 19.) In either event, the outcome is the same, as FreightCo had notice of assignment well before December 22, 2007.

argument (Docket # 63, 77) are also DENIED.

This matter is set for a telephonic conference on August 20, 2010, at 1:00 p.m., Fort Wayne time, to schedule what remains of this case. At that hearing, the Court will discuss and confirm with counsel the reconciliation of the setoff ($119,226.95 – $23,369.81 = $95,857.14), the calculation of prejudgment interest, and the issue of attorney's fees and costs. The Court will initiate the call.

SO ORDERED.

Enter for the 28th day of July, 2010.

S/Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge